We have a relatively long morning and so I will ask the clerk to dispense with the reading of the calendar and just go ahead and call the first case for argument, please. Case number 25-1819 from the Southern District of Iowa, Penguin Random House, et al. v. John Robbins, et al. Mr. Wesson, when you are prepared, you may proceed. May it please the Court, Counsel, I have reserved seven minutes for rebuttal. When this Court vacated the preliminary injunction entered by the District Court on explicitly the same rationale that it has now re-entered, this Court relied primarily on three cases, Net Choice, Hazelwood, and Henry. According to the District Court's alternative analysis, if it applied Net Choice, Hazelwood, and Henry, the State would win and there would be no facial preliminary injunction. Instead, the District Court engaged in Net Choice analysis under three different modes of interpretation, but that Court ignored this Court's admonition about how to do Net Choice right, and in so doing, it made legal error worthy of reversal. To start where this Court ended last time, this Court found that Iowa's law was a viewpoint neutral, content-based, age-appropriate restriction. It found that school libraries are intended to advance the curriculum of the school. And it found that Iowa is not required to have speech that undermines or is inconsistent with the goal of advancing the curriculum. On remand, the District Court applying Hazelwood and Henry and the school-sponsored speech doctrine, which requires a reasonable relation to a valid pedagogical interest, agreed that under that standard, an injunction was improper. But instead, it relied primarily on what we've called the Miller-Light standard, a adjustment to the Miller standard from the Supreme Court case, and alternatively, it found the law was unconstitutional under Pico and Pratt. Unlike the last time I stood before this Court arguing for the same vacater of the same injunction that I'm standing before you today, there have been two major developments, both in this circuit and other circuits, that help this Court in its analysis. First, the Walls v. Sanders case recognized that Pratt has been abrogated by subsequent Supreme Court opinions, and so the second mode of analysis in the District Court's opinion is no longer relevant. Also, to the extent that it relied on the First Amendment holdings in Pico and Walls v. Sanders, this Court also found that that has no persuasive force. Is there anything left in the State's view to this? I understand your views on the value of Pratt and Pico. Is there anything left to the discussion in Pratt that talks about suppressing certain ideological viewpoints, or like Justice Rehnquist's views in Pico about the First Amendment does not permit the suppression of ideas? In the State's view, assuming this isn't a government speech case, which I take it you disagree with, but what's left of that sort of vein of thinking in this Court or in the Supreme Court? So first, it's important to recognize, and that is going to get to the second major development in the case law, which is the Little v. Lano County en banc case out of the Fifth Circuit. There, 10 judges, a majority, assessed not only the applicability of the right to receive information in the public library context, but it went out of its way to vacate its own decision in Campbell v. St. Tammany Parish, which was its school library case. And this is still in the part of the opinion that's a majority. These only seven judges were part of a plurality that endorsed government speech as being the proper standard. One aspect of this Court's earlier decision that the State agrees with from Judge Locher is that in the past, the Eighth Circuit has used school-sponsored speech and government speech interchangeably at times, so to understand the confusion where school-sponsored speech was established as the standard, but government speech was found to be insufficient for standing. But as for the remainder of Pratt, nothing's left. This Court was clear in walls against Sanders. In the First Amendment context, viewpoint discriminatory actions can be, depending on what type of scrutiny is applying, subject to strict scrutiny. But this Court has already held that Iowa's law is not viewpoint discriminatory. That was correct, because there's no viewpoint that is descriptions of sex acts, and this applies regardless of the ideology or partisanship of the authors. Now, if this Court revisits its standing holding that the plaintiffs lacked the ability to challenge the suit to address government speech on the merits, which is urged not only by the State here, but also by our amici States, it should find that because the shirtlift factors apply to the government providing books in its public schools, that the curation of books is government speech. That's perfectly consistent with what the U.S. Supreme Court said in the Net Choice case, which itself was not a speech case, a government speech case, but it was a speech case. And what Net Choice said was the act of curating and providing information is itself speech. Here, the curator, by passing laws that decide what books are appropriate for the school library shelves, is the State. And so the government speech is the cleanest way to interpret how to judge this. And that would also avoid any spillover effects to the extent this Court is concerned of viewpoint or other discrimination in other First Amendment contexts. But that said, this Court does not need to— Let me just, just to make sure, if we hold that this is government speech, let's say Iowa passes an act, for example, that prohibits any sort of Marxist or neo-Marxist writings in school libraries. Under the government speech analysis, that would be perfectly permissible. Is that correct? Yes, Your Honor. And if I could point the Court to Little v. Lano County, it discusses a slightly less difficult question. They discuss a hypothetical of the state, or in that case, Lano County, prohibiting books authored by white supremacists like David Duke. And the Fifth Circuit found that such a decision, if it's government speech, would be allowed. But also going into the longstanding regulations that librarians use to weed out books, which is, I believe my friends on the other side agree, an acceptable method to choose what books are on the library shelves, some of the considerations that professional library organizations endorse include removing certain hateful or racist types of books. That's far closer to viewpoint discrimination than it is to the—than Iowa's law is. And to the extent that longstanding applications of librarians to curate their collections does not violate any student's or author's constitutional rights, nor should the state's much less viewpoint discriminatory approach of prohibiting books with certain sex acts. I'd also like to point out to some of the net choice problems that have been raised in the District Court's opinion. First, the District Court was skeptical, despite what this Court said at Addendum 25, I believe. Oh, sorry. Despite what this Court said, that it is the plaintiff's burden to both show the denominator of the affected books and to show the lopsided scale of the unconstitutional applications to the constitutional applications. He was skeptical that in challenging this law, which according to the denominator the District Court chose affected about 500 books, would require the plaintiffs to produce evidence that a majority or supermajority of those books are actually unconstitutionally removed. But my read of this Court's opinion in remanding on the net choice factors was that Justice Kagan was right, that facial injunctions are hard, and that if the plaintiffs want to meet their burden under net choice, what's required is first for the plaintiffs to define the scope of the law. Here, the state purports that the law prohibits the purchase or removal, the purchase or retention of books that have a prohibited sex act, and thus that the universe of books are any books that a library could reasonably purchase. I think my friends sort of agree with that. They disagree on what books a library could reasonably purchase, but they agree that the scope of the books at least are the books on the shelves. The District Court said about 500. When it comes to the step two, the unconstitutional applications, it's still not entirely clear to me what the right to receive information here precisely is, who's speaking, who's listening, and how the government is prohibiting that speech. It's important to note that despite some strong rhetoric, this is not a book ban. No student can be punished for bringing any book, even a prohibited book, into school. And there's also some evidentiary issues in what the District Court accepted. He acknowledged familiarity with eight of the books. And unsurprisingly, because the District Court is very smart, the books that he was familiar with have high literary and artistic merit. But there's no reason to think that those eight or so books are representative of all 500 of the books. But it's not the defendant's role or job or burden to show that each of the 500 removed books to the extent they were properly removed at all, because there is an evidentiary issue in that to this day, we still have not been pointed to a single passage in a single book that warrants removal with the exception of Gender Queer, which the District Court admitted was properly removed. But there's also a sampling issue. The District Court is aware of important literary works, but at least, and I don't know if he was, I was not aware of the book Gender Queer before this litigation. I was not aware of, if the court looks to the appendix at page 227 or 212 or 214, the books Flamer or Let's Talk About It or what Little Villano County referred to the book It's Perfectly Normal, which Little Villano County described as a, and this is the majority, a book containing cartoons of people having sex and masturbating. Those clearly fall under the appropriate removal of the statute. None of those make an appearance in the District Court's opinion. And none of that is because it is the state's burden to go book by book and prove that each removal is proper or improper. The District Court found that there was one proper removal, Gender Queer, that there were eight improper removals. The one example I could find that was based on one of the declarations was to Jodi Picoult's declaration, in which she says one of her books contains the word erection. I don't know. I have not read that book. I don't know what else is in the book. I don't know if the removal is proper or not. But the District Court found that it was an unconstitutional application of the law. One of the things that I was a little bit surprised about was the District Court's conclusion that if the school speech test on Hazelwood was applied, that that ended the discussion in a way unfavorable to where the District Court wants to be, right? And I'm looking at that and I'm saying, well, you know, the actual language in Hazelwood is pretty plain that, you know, it says that whatever books are involved in such a speech or whatever speech is involved, it must be fairly characterized as part of the school curriculum and it has to be supervised by faculty members and it has to be designed to impart particularized knowledge or skills to the student participants or other audience, right? And I'm looking at that sort of three-prong analysis and I'm not sure that – now, there's been a lot of water under the bridge since Hazelwood was written, but if you just go back to look at what Hazelwood actually says, it seems to me that some analysis would still be necessary under the school analysis to find out how a curated library collection advances the particular skills and knowledge of the students, which I guess is probably apparent on its face, but it's that part where they talk about that it's designed to impart particular knowledge or skills, you know? And, you know, curated library is simply that. And I know I've got you now into your rebuttal, so I'll let you answer the question and sit down if you wish. Yes, Your Honor. If plaintiffs had chosen to bring an as-applied challenge under the Hazelwood standard, we'd have a much more fulsome factual record as to whether that book was properly removed or not. And regardless of who won, I bet there would be an appeal to this court which could then establish what the proper approach to removing a single book is. But plaintiffs chose to bring a facial challenge here. And what this court said the first time around is facial challenges are hard to win. One of the reasons that under Hazelwood specifically, and taking all of what you said to heart, may be an imperfect approach if you go as deep as those three aspects of the law and instead don't take what this court had distilled as the rule of law earlier, which was that there must be a relation to a legitimate pedagogical interest, which there is here, and that should be enough. And I think ultimately, and I'll sit down after this to save my rebuttal time, the question is not is the government prohibiting speech, but is the government required to subsidize speech? And to point briefly to Judge Ho's concurrence in the Little Villano County case, and I believe to the party's position here, no one is arguing the state has an obligation to purchase these books. So there's no obligation for the state to purchase any of the books that plaintiffs say are being unconstitutionally removed from the shelves. Yet the constitutional violation occurs only at the point at which a book that is already on the shelf is removed. Let's say a book becomes too dog-eared with use, and the school library has to decide whether to purchase a new one. Does the law prohibit the purchase of a new book to replace that book? Let's say that a school librarian decides that a book is inappropriate and should be removed from the shelves for a variety of reasons. Is that a constitutional case? In either case, the answer should be no. It's no under this court's earlier ruling. And to the extent this court is open to it, I would respectfully request, if it vacates the injunction, more analysis on the proper standard to apply, because this law has now been in effect for three or so of the past four semesters at the time of the brief filing. And to the extent that at one point it was a pre-enforcement challenge, it certainly is not anymore. This law has been in effect. The status quo is the law is in effect, because when a law is in effect and an injunctive challenge is brought, that is the status quo. And as the US Supreme Court recently affirmed in Trump v. Casa, states suffer irreparable harm when their laws are improperly enjoined. I reserve the rest of my time for rebuttal, and I respectfully ask this court to vacate the same injunction it earlier vacated. Thank you. Thank you, Mr. Wesson. Mr. Sperling? May it please the court, I'm Fred Sperling on behalf of the plaintiff. Authors, publishers, students, and educators, before I address the questions the court asked counsel for the state and statements that the state's counsel made, I want to note the two most serious problems with the library restriction, which removes all of the discretion that teachers and librarians historically had in school districts in Iowa. First, the library restriction is a statewide mandate that prevents teachers and librarians from considering the value of the book as a whole, as the Supreme Court's Miller Standard requires. And second, the library restriction applies the same standard from kindergarten through 12th grade, so that a book that's inappropriate for a kindergartner must be taken off the shelves for high school seniors as well. As a result, the unconstitutional applications of the library restriction substantially outweigh any potential constitutional applications. I want to begin by making clear the plaintiffs do not argue, and never have argued, that there is any First Amendment right to require that any particular book be purchased. And indeed, the plaintiffs recognize the continuing discretion of educators to scrutinize books. Unfortunately, what this statute does is it takes away that discretion. So we're not saying that merely because a book passes the Miller Standard, it's required to be on school library shelves. What's the best authority for anchoring that discretion only in a librarian? Well, let me turn directly to the Hazelwood and Henry analysis that the state primarily relies upon. So in Hazelwood, the court applied the non-public forum standard in the context of student speech as part of a journalism course in an article that the school principal was concerned would reveal the identity of students who'd become pregnant. And the court in Hazelwood deferred to the discretion of local educators. The library restriction does just the opposite. It takes away any discretion whatsoever by local educators. In Henry, the case involved the distribution of condoms as part of a campaign in a school-sponsored student election that this court said was curricular. The library, of course, is entirely voluntary. No student is required to read any particular book or any book at all from a library. And the court in Henry also deferred to the discretion of local educators. And again, the library restriction does just the opposite. And as the district court noted in both Hazelwood and Henry, you had captive settings. And then this court's opinion in Walls explicitly recognized the distinction between curriculum and school libraries. So the state attempts to rely on Hazelwood and Henry for the school-sponsored speech doctrine, but that's a misnomer. They're really trying to make it into the state-sponsored speech doctrine. And both of those cases involve deference to decisions of local educators. And of course, here we're not dealing with the question of the removal of individual books. We're dealing with an across-the-board statewide statute that removes the discretion of local educators. The school-sponsored speech doctrine's always been applied looking at the particular facts and circumstances at issue, the newspaper article that might have revealed the identity of pregnant students, the distribution of condoms as part of a school government election. Very fact-specific, very context-specific, and most importantly, exercised by local educators. And that's the primary problem here. This statute removes those rights altogether. Now, once a book is found to be permissible under Miller, local educators and librarians still have the right to scrutinize that book. They can rely upon factors such as the factors that the plurality in PICO pointed to, pervasive vulgarity, educational propriety. And let me just offer an example. A book that describes how to build a bomb and blow up buildings. No sexual content. Of course, educators are entitled to remove that book or not put that book on the shelves in the first place. Those are exactly the kinds of factors that librarians throughout the state of Iowa have always relied upon and should continue to be able to rely upon in curating school libraries. In terms of bringing as applied challenges that the state urges, those wouldn't be feasible when you have over 300 Iowa school districts, and it wouldn't provide prospective relief. In the late Justice Scalia in Virginia versus Hicks addressed this specific problem. He said that facial challenges in the First Amendment area are important because, as Justice Scalia wrote, many persons, rather than undertake the considerable burden and sometimes risk of indicating their rights through case-by-case litigation, will simply choose to abstain from protected speech. Even though we have the five largest publishers in the country as plaintiffs in this case, it's simply not sustainable and workable to bring case after case after case with district after district. There is some overlap in the books that have been removed, but there's also great inconsistency. Part of that is due to the breadth and vagueness of the statute itself. The superintendent of education said the statute is confusing. Teachers and educators have been told to err on the side of caution. They risk losing both licensure and their employment itself. There's a very important declaration in the record that I want to point this case to. It's the declaration of Lisa Petri. She talks about how she and other educators in Iowa have diligently attempted to apply the mandate of the statute and have felt compelled to remove books. Now, there is a full factual record supporting Judge Locher's decision here. First of all, in the prior appeal, the state admitted, these are the state's words, every book removed from library shelves because of the library restriction included at least some material that violated SF-496. That's an admission. It's not like a light switch that you can flip on and off whenever it suits you. They admitted that every book that was removed contained material that required it to be removed under the statute. Moreover, the plaintiffs have produced extensive evidence of the books that have been removed and that school officials applied the library restriction in good faith. And I point this court also to the district court's details findings of fact that we summarize in our brief on page 43. So there is a full factual record here. And what's the method that the Supreme Court has said for applying facial challenges? They've been very clear about this. In United States versus Stevens, the Supreme Court said, you look either at examples or reasonable hypotheticals. Now, that was a case involving criminalization of depictions of animal cruelty and was found overbroad based on categories such as hunting magazines, programs, and videos. What the state argues here is you should consider every book that's ever been published. But that's an absurd hypothetical. And this court itself has said you shouldn't rely on absurd hypotheticals. There is no evidence that the book they point to in particular, the Kama Sutra, has ever been on a library shelf in Iowa. That's absurd. The reasonable scope here are books that are or plausibly could be in Iowa school libraries. That's what Judge Locher properly looked at. And then he certainly talked about examples, some of which he had personal knowledge about. But he also talked about categories. And he delineated a whole series of categories of books that have been and would be removed. One of his hypotheticals concerned the Clinton impeachment. And he asked counsel for the state, there's some explicit sexual content in connection with the Clinton impeachment. Is it your view that a book that describes that would be inappropriate on a school library shelf in Iowa, even for a 12th grader? And the state said, yes, it would be. That's the scope of this statute. It's a per se rule. It's a big government statewide approach that takes away the discretion of local librarians. And that's the primary problem. I want to go back to, again, what are the key cases that ground this discretion in local librarians? I mean, when I go back after oral argument this afternoon and look for your strongest cases, I understand it was a factor. Yes. In Hazelwood, and I forget the other case you cited, is there any, where do I look to say it should not extend to state officials? Because I think there are cases that also reference state officials as having some mix of authority in this area. Well, we don't deny that the state could enact an appropriate statute. And in fact, it's done so. There is a prohibition before this statute was enacted on books that are obscene as to minors. And it cited the Miller factors. It's a perfectly proper statute. But you're saying that the librarian could go beyond and remove books that are not obscene. Yes. What's the case that says the state can't do that? I don't argue that the state... I don't know that it's out there. I get the gist of your argument. I think that's why the district court struggled, right? And I'm finding this case very hard to put into a box. I take your point, Your Honor. We don't take the position that there's no circumstance in which the state could have a role beyond Miller. We say that this statute is unconstitutional in its attempt to do so. And why? Yes. Well, I think part of the reason why it's hard to find other law on it is virtually without exception. Indeed, without exception until this case. Book removals have been about the removal of one or a few books. PICO was about nine books. Many of the other cases are about one or two books. It's not until Iowa decided they were going to do this at the statewide level. But it's a viewpoint neutral, is it not? I mean, that's what we held before. We agree. The problem is that it clearly violates the First Amendment. Now, First Amendment rights. And that's the part I'm struggling with. Where is it clear? Yeah, so although the justices disagreed on the proper standard to apply for the removal of individual books in PICO, eight of the nine justices explicitly recognized that there are First Amendment rights in school libraries. They disagreed on the standard to apply, but they didn't disagree. And whose rights were those? Well, in that case, those were the rights of students. Yes, those are rights of students in that case. Numerous courts have recognized and held that First Amendment rights exist in school libraries. And as this court recently held, neither students nor teachers lose their First Amendment rights at the schoolhouse door. That's this court's en banc opinion in Henderson versus Springfield. So it's been a historic, traditional matter that local school districts address these local issues. And we don't think that the Hazelwood standard is the proper standard here. But if the court were to adopt it, this statute fails under the Hazelwood standard because this is an appropriate pedagogical purpose. These books have been curated by librarians considering the local communities. And there can be different factors for urban districts such as Des Moines. OK, go ahead. You know, I just keep turning this over in my brain. And maybe I just am not seeing the whole field the way that I ought to. But I keep looking at it. And the statute itself talks about description or visible depictions of a sex act. Yes. And so a mere statement that President Clinton engaged in an act of oral sex in the Oval Office, that's not a description of the sex act. It's just an explanation of what happened, right? And so I'm having a hard time. Because what I'm hearing in this whole discussion is it's sort of like the hypothetical is laid out. The government says, OK, I agree that that would be covered. I'm not sure it would be. I'd have to read the report to see if it is or it isn't. And I'm looking at it saying, well, wait a minute. Once again, aren't we back in the land of as applied? I mean, isn't that really the issue? Because by erring on the side of caution, right, the librarians as of necessity have gone about the business of striking a whole group of books that seem to me could be problematic, right? I mean, because they're taking the mere reference or mention of a sex act and saying it's the equivalent of a description or a visible depiction. And I don't think that's real, right? I mean, just look at the eight books that Judge Locher identified. You know, a number of those books don't describe sex acts. They just describe acts of sex or violence that took place, right? Well, two things I want to say in response, Your Honor. First, I want to make it clear we did not seek to enjoin visual depictions. The state referred to cartoons. That is not part of the injunction we sought or obtained. We were focused solely on written descriptions. We recognize that other issues may be implicated with cartoons or pictures. That is not part of this case. We didn't seek an injunction on that. We didn't obtain an injunction on that. This is only about written descriptions. As to written descriptions, the problem is it is terribly vague. What is a description of a sex act? The state has declined to offer any useful guidance on that subject. The state admitted, and I think this is critically important, Your Honor, in the record. They admitted that every book that was removed was properly removed under the application of the statute. One of the Iowa school librarians explained how the law is difficult to understand and  She wrote that despite the fact that the other teacher librarians in my district and I have spent hundreds of hours reading and reviewing books in order to establish a common understanding of the law, we're left with uncertainty in many cases. We're sometimes uncertain as to whether or not a passage in a book is a definition or a description of a sex act, particularly when it comes to informational text. Certain books answer important questions about reproduction and sex, but do they define or describe sex? So these books are not just books of fiction. They're books of anatomy, about biology. They're books about authors who suffered sexual assault and how they dealt with that. And these books are off the shelves for 12th graders as well. But let me ask you, going back to what I asked your friend on the other side about what's left of Pico and Pratt, and I'll just disclose some of my cards here. I have on a certain level a sympathy for what then Justice Rehnquist was talking about, this attempt to impose orthodoxy. I forget what the language, a pall of orthodoxy. Or I'm wondering if those line of cases have any legs here. What is the orthodoxy that the plaintiffs think is being imposed here? Because we have our panel opinion that says it's viewpoint neutral. What is the orthodoxy here? We don't dispute that the statute is viewpoint neutral. We do question. In the prior opinion, the court stated, we note that the district court concluded that library vision is a viewpoint neutral, content-based age appropriate. Right. So what is the orthodoxy? The district court relied on Pratt and Pico, and that's what I'm looking for. I'm having a hard time putting my fingers on what that is. So first, let me just say that the statute calls its standard age appropriate, but it's not. It's age indifferent. It's the same standard from K through 12. I just want to be clear on that. So we're not arguing that this is singling out particular political viewpoints or anything of the sort. Our argument is that this is a facially overbroad statute in which the unconstitutional applications, as admitted by the state, as documented— Don't you need that in order to win under Pico or Pratt, which is what the district court relied on here? Yes, and the district court relied first on the admission by the state. It relied— But the admission to what? That every book that was removed, every one of those 500-plus titles— Under Pico, don't you need a pall of orthodoxy? No, Your Honor. Pico focused on why particular books were removed, and it focused on those issues. That's not what the statute is. We're not relying on Pico for that. We do think it's significant that eight of the nine justices found that there are continuing First Amendment rights in school libraries. That's the only point on which we rely for Pico, although we do think— Is that the only point the district court relied on, Pico? I think the district court took guidance from Pico, but we're not saying Pico controls this case. We think the other decisions of the Supreme Court, of this court, and of other courts do lead to a clear result here. You have a full factual record. You have an admission by the state. You have declarations in evidence, particularly the Petrie deposition. The nonpublic forum standard—and we're not arguing that a school library is a nonpublic forum, although many courts have found it is—but the nonpublic forum standard says the restrictions have to be reasonable in relation to the purpose of the forum. The purpose of the forum here, as amply supported by declarations from school educators and the amicus brief from the Library Association, demonstrate that these carefully curated collections in different communities serve to advance both the curriculum and the broader goal of educating students and improving their reading skills and interest in reading. This across-the-board ban by the state removes that altogether. We don't think— Well, it removes a certain subset of— I'm sorry? It removes a certain subset of books, right? I mean, it doesn't remove that altogether. It removes it as soon as there's—some of these books say nothing more than someone spent the night together or made love. Well, and there's a dispute whether those are subject to removal or not. I understand that some educators have removed those. But there's not a dispute, Your Honor, because the state admitted that they were properly removed under the statute, and Ms. Petrie, on behalf of herself and other librarians, says that when the state told them, err on the side of caution, where the state superintendent said it's ambiguous, it's confusing. That was the word the state superintendent used. The statute is confusing. Err on the side of caution. And the state admitted the books that were removed should have been removed. That's the critical point, Your Honor. Thank you, Mr. Sperling. Thank you, Your Honor. Your time has expired. Mr. Wesson. Your Honor, I'd like to start with this supposed concession, which I think is a misreading. The appellee's brief at 30 cites to it. You just heard all about it. If you look at Appendix 416, which is the district court's opinion, he quotes the state's concession. Depending on whether you look at our brief for the Westlaw site, it's at page 58 or 59. The paragraph is three sentences, each of which involves quotes and direct cites to the district court's opinion. We were characterizing what the district court said, and the very first sentence of the next paragraph starts the district court's downfall. The sentence in question includes the word age-appropriate in quotes with a citation to the district court's earlier opinion that we were vacated. The state has not conceded that every book was properly removed. We do not concede that every book was properly removed. We do not know which books were properly removed or not because plaintiffs have not met their burden to show that. To go to some of this court's other questions, first, the Clinton impeachment question. If under the 702.17, a book describes Monica Lewinsky putting her mouth on Bill Clinton's penis, that book would be a violation of the law. If instead, it describes that President Clinton engaged in oral sex or had an affair with an intern, neither of those would be worthy of removal. And even the district court, much to its chagrin, acknowledged that it was accepting our read of descriptions for those purposes. Our friends rely on Virginia against Hicks and Stevens, which are both First Amendment facial injunction cases that predate Net Choice. Net Choice laid out the standard for what the proper approach in facial injunctions are in the First Amendment context. This court has now repeatedly endorsed that approach. And while we understand that Stevens or Virginia against Hicks could be read differently, we think that the better read and the better path is for this court to just apply Net Choice. As for a book about how to make bonds, plaintiff's contention seems to be that if the state passed a law saying that a library, a public school library, could not purchase books on bond making, that that would be unconstitutional. But that if a librarian chose not to purchase a book or to remove a book on the shelves that involves bond making, that that would be a constitutional application. Well, isn't the argument a little more nuanced? I mean, if it's protected speech, right, in the sense that it's not obscene, then it goes to the librarian, whereas that might not be protected speech. Maybe it is protected speech. Your Honor, if it's the Anarchist's Cookbook, which is a book about bond making that endorses an anarchist viewpoint, and the state passed a law banning all bond making, and that includes the Anarchist's Cookbook, I would posit that a First Amendment challenge to that law, a facial First Amendment challenge, or as applied, would be inappropriate. And this, Judge Kobus, you got to a key point when it comes to how to differentiate between librarians in the state. If a plaintiff wanted to sue a librarian, like in Little against Llano County, or the state, like in this case, it's the same Section 1983, and it's the same First Amendment. Because ultimately, these are both state actors for the purpose of whether or not a violation is occurring with regards to the First Amendment. And I understand that traditionally, librarians have played some role. If this court looks at the various opinions in this case, Judge Locher notes, for example, that some books like The Lawn Boy, which includes a graphic description of oral sex, according to the opinion, was asked to be removed in some school districts, and the school district panel declined to do so. That is one of the reasons why the state passed a law. I'd also like to quickly touch on this obscenity point. The obscenity to minors law is a crime. It is not surplusage to enact a licensure issue, which is not subject to beyond a reasonable doubt, to also apply that law in the civil context. To the extent that if the Iowa legislature revoked that obscenity law, according to the district court, that would affect the constitutionality of this unrelated law. That is improper. I see that I'm out of time, but I'm happy to respond if the court has any further questions. Seeing none, I want to thank you both for your time here today. The matter will be taken under advisement. For a server rebuttal? Yes, Your Honor. Why? I want to correct the statement that was made about the plaintiff's position, which is contrary to the plaintiff's position. That's the only point I would address. I'm going to submit the case on the argument that's been made. It seems to me that server rebuttal is, in our court, frankly, unheard of, and I'm not about to go down that path. And if you have something that you want to point out, the 288J letter, you may do so. Thank you.